[Nos. 57566-5, 57763-3.   En Banc.   October 15, 1992.]

GEORGE B. TELLEVIK, ET AL, *Appellants,* v. REAL PROPERTY KNOWN AS 31641 WEST RUTHERFORD STREET, LOCATED IN THE CITY OF CARNATION, WASHINGTON, AND ALL APPURTENANCES AND IMPROVEMENTS THEREON, ET AL, *Respondents.*

GEORGE B. TELLEVIK, ET AL, *Appellants,* v. 9209 218TH N.E., REDMOND, KING COUNTY, AND ALL APPURTENANCES AND IMPROVEMENTS THEREON, ET AL, *Respondents.*

70

*Kenneth O. Eikenberry, Attorney General,* and *Roselyn Marcus, Assistant; Dominick V. Driano* and *Driano & Sorenson,* for appellants State and Webb.

*Kenneth O. Eikenberry, Attorney General,* and *Jonathan T. McCoy, Assistant; Seth R. Dawson, Prosecuting Attorney for Snohomish County,* and *John Stansell, Deputy,* for appellants State and Scharf.

*Richard J. Troberman,* for respondents Real Property, et al.

*George L. Bianchi* and *Allen M. Ressler,* for respondent Pearson.

DOLLIVER, J. — Plaintiffs in both these consolidated cases appeal from trial court decisions which held RCW 69.50-.505(b), authorizing the seizure of real property subject to forfeiture, is unconstitutional on its face and as applied to seizure of a private residence and residential rental property. The trial courts reached these conclusions by ruling the statute fails to provide minimal due process safeguards under the United States and Washington State Constitutions.

In addition, the plaintiffs in Tellevik v. 9209 218th N.E. appeal the trial court's decision interpreting RCW 69.50-.505(a)(8) as requiring a present use of real property violating the statute in order to permit a seizure. The plaintiffs in Tellevik v. 31641 West Rutherford Street appeal the trial court's grant of summary judgment and award of attorney fees in favor of defendant Janet Pearson and the denial of plaintiffs' CR 56(f) motion.

Tellevik v. 9209 218th N.E., cause 57763-3

On October 27, 1989, the Snohomish County Regional Narcotics Task Force and the Eastside Narcotics Task Force executed a search warrant on residential real property located at 9209 218th N.E. in Redmond. The owners and occupants of the residence, Charles L. Wilson and Janet L. Wilson (defendants), were present during the search. The officers found a marijuana grow operation, consisting of three rooms and

approximately 60 mature plants and 70 starter plants, in the "crawl space" beneath the first floor of the residence. There is no allegation the search warrant was improperly obtained or executed.

On April 6, 1990, Charles Wilson pleaded guilty to possession of marijuana with intent to manufacture in violation of RCW 69.50.401(a); charges against Janet Wilson were dismissed.

On May 15, 1990, George B. Tellevik, Chief of the Washington State Patrol, and James I. Scharf, Sheriff of Snohomish County (plaintiffs), applied ex parte for a warrant of arrest in rem, although the defendants assert plaintiffs knew they were represented by counsel. On May 21, 1990, after the trial court orally informed the plaintiffs it would not issue the warrant, they filed a complaint for forfeiture in rem and a lis pendens.

On May 25, 1990, the trial court issued its written order denying issuance of the warrant. The court interpreted RCW 69.50.505(a)(8) as permitting a seizure only when the property is "currently being used in violation of RCW 69.50-.505(a)(8)." The motion for reconsideration was denied.

On July 5, 1990, plaintiffs filed a motion for discretionary review of the trial court order. On July 16, 1990, the defendants moved to dismiss the complaint for forfeiture in rem, but these proceedings were stayed pending resolution of review in the appellate court. On August 3, 1990, defendants filed a cross motion for discretionary review of the trial court order challenging the constitutionality of the statute. The Court of Appeals denied both motions for discretionary review.

On October 2, 1990, an agreed order was entered setting aside the stay, and defendants refiled their motion to dismiss the complaint for forfeiture in rem, asserting (1) the court lacked jurisdiction over the property because it was never seized, and (2) the statute was unconstitutional on its face and as applied. On November 1, 1990, the trial court granted the motion to dismiss on both grounds. The court also released the lis pendens. Plaintiffs appealed.

Tellevik v. Real Property Known as 31641 West
Rutherford Street, cause 57566-5

On September 26, 1989, the Eastside Drug Task Force executed a search warrant on the residential real property located at 31641 West Rutherford Street in Carnation. The residence was used as a rental property by its owners, Donald W. Pearson and Janet A. Pearson. Upon execution of the warrant, the officers found a marijuana grow operation, consisting of three rooms of equipment and approximately 40 marijuana plants, in the basement of the house which had been modified to provide access through a trapdoor. Donald Pearson was present in the residence during the execution of the warrant and taken into custody. Subsequently, Mr. Pearson and the renter of the property pleaded guilty to possession with intent to manufacture marijuana, in violation of RCW 69.50.401(a). As in the prior case, there is no allegation the search warrant was improperly obtained or executed.

On April 13, 1990, a complaint for forfeiture in rem was filed by plaintiff George B. Tellevik, Chief of the Washington State Patrol, against defendant real property, pursuant to RCW 69.50.505(a)(8). Gregory J. Webb, Chief of the Carnation Police Department, was later added as a party plaintiff by stipulated order. A lis pendens was also filed on the property. At an ex parte hearing, the presiding judge found probable cause to believe the defendant property was subject to forfeiture under RCW 69.50.505 and signed a warrant of arrest in rem. The judge based the finding of probable cause on the complaint for forfeiture in rem and the affidavit of one of the Carnation police officers who executed the search warrant. The summons, complaint for forfeiture in rem, lis pendens, notice of seizure and intended forfeiture, the warrant of arrest in rem, and the supporting affidavit were served on defendants Donald and Janet Pearson on April 13, 1990.

Both defendants moved to dismiss the complaint arguing RCW 69.50.505(b) is unconstitutional on its face and as applied; Janet Pearson also moved for summary judgment

under the innocent owner provision of RCW 69.50.505-(a)(8)(i). Plaintiffs moved for a continuance on the summary judgment motion to complete discovery, pursuant to CR 56(f).

On September 5, 1990, the trial court held the statute was unconstitutional on its face and as applied. The court (1) granted Janet Pearson's motion for summary judgment ruling there was no genuine issue of fact as to whether Mrs. Pearson was an innocent owner and plaintiffs had failed to demonstrate that further discovery would establish that she was not an innocent owner; (2) denied plaintiffs' motion for a continuance; and (3) awarded Janet Pearson attorney fees pursuant to RCW 4.84.185. The court also denied Janet Pearson's motion for an order prohibiting a forced sale of the community real property because she failed to demonstrate such a sale would work a manifest injustice. The warrant for arrest in rem was quashed and the lis pendens canceled. Plaintiffs appealed.

I

The first issue is whether the trial court in Tellevik v. 9209 218th N.E. erred in holding RCW 69.50.505(a)(8) required a present illegal use in order to subject the property to seizure. Because the warrant was not sought until several months after the marijuana had been removed from the property, the court found no present use and refused to issue a warrant of arrest in rem.

RCW 69.50.505(a)(8) provides:

The following are subject to seizure and forfeiture and no property right exists in them:

. . . .

(8) All real property, including any right, title, and interest in the whole of any lot or tract of land, and any appurtenances or improvements *which are being used* with the knowledge of the owner for the manufacturing, compounding, processing, delivery, importing, or exporting of any controlled substance . . .[.]

(Italics ours.)

Defendants contend the plain meaning of the language supports the trial court's interpretation and, because dif-

ferent language was used in subsection (a)(8) as opposed to the language in RCW 69.50.505 for other types of property — "used, or intended for use" — and as opposed to the language in the federal counterpart, 21 U.S.C. § 881(a)(7) — "which is used, or intended to be used", the Legislature must have intended a different result.

■ When the wording of a statute is plain and unambiguous, its meaning must be derived from the wording used. *Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). The plain language of the statute states that "real property . . . and any appurtenances or improvements which are being used with the knowledge of the owner" in violation of the statute are "subject to seizure and forfeiture and no property right exists in them". RCW 69.50.505(a)(8). The wording does not allow real property, as it does for other types of property, to be subject to seizure which is only "intended for use" in violation of the statute. Thus, the Legislature narrowed the circumstances under which real property was subject to seizure to those circumstances where it is being used with the knowledge of the owner.

■ The crux of this issue is whether property, which is subject to seizure and forfeiture, loses this status when illegal conduct ceases due to law enforcement intervention. In interpreting a statute, the primary goal is to promote the intent of the Legislature. *Rozner*, 116 Wn.2d at 348. The Legislature has declared:

> [T]he forfeiture of real assets where a substantial nexus exists between the commercial production or sale of the substances and the real property will provide a significant deterrent to crime by removing the profit incentive of drug trafficking, and will provide a revenue source that will partially defray the large costs incurred by government as a result of these crimes. The legislature recognizes that seizure of real property is a very powerful tool . . ..

Laws of 1989, ch. 271, § 211, p. 1298. If the statute were interpreted to allow property subject to seizure to lose this status when law enforcement intervenes to stop the illegal conduct, the purposes of the statute would not be furthered, but hampered. Law enforcement must establish probable

cause for issuance of a warrant of arrest in rem that the property was being used with the knowledge of the owner in violation of the statute and that a substantial nexus exists between the commercial production or sale of the controlled substance and the real property. RCW 69.50.505(a)(8). As plaintiffs point out, this information may not be available until after a search warrant is issued, a search conducted, contraband seized, and occupants arrested.

To interpret the statute as requiring a continuing illegal use from the time of search and arrest to the time of seizure would negate the legislative purpose of removing the profit incentive from drug trafficking and defraying governmental expense because law enforcement would rarely be able to establish the requisite probable cause for seizure prior to the search of the property and arrest of the occupants.

■ We hold RCW 69.50.505(a)(8) to mean that property which is subject to seizure does not lose this status by virtue of law enforcement intervention.

## II

■ Next, the Wilson defendants and amicus assert RCW 69.50.505(b) is unconstitutional as applied under the due process clause of the federal and state constitutions. However, defendants and amicus failed to address the factors set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) in asserting a violation under the state constitution. An analysis of the *Gunwall* factors, especially prior state constitutional law and preexisting statutory law, would seem to be particularly appropriate in determining whether the ex parte procedure followed here meets due process standards. *See Gunwall*, 106 Wn.2d at 61. This court has declined to address independent state constitutional grounds when they have "not been thoroughly briefed and discussed". *Gunwall*, 106 Wn.2d at 62; *World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 390, 816 P.2d 18 (1991); *Rozner v. Bellevue, supra* at 351-52; *Spokane v. Douglass*, 115 Wn.2d 171, 176, 795 P.2d 693 (1990). Because the defendants have not addressed the *Gunwall* factors, we only address whether the procedure used meets federal due process standards.

■ A statute must be given a construction which preserves its constitutionality if at all possible. *High Tide Seafoods v. State*, 106 Wn.2d 695, 698, 725 P.2d 411 (1986), *appeal dismissed*, 479 U.S. 1073 (1987).

■ RCW 69.50.505(b) provides:

> Real . . . property subject to forfeiture under this chapter may be seized by any board inspector or law enforcement officer of this state *upon process issued by any superior court* having jurisdiction over the property. Seizure of real property shall include the filing of a lis pendens by the seizing agency. Real property seized . . . shall not be transferred or otherwise conveyed until ninety days after seizure or until a judgment of forfeiture is entered, whichever is later . . ..

(Italics ours.) Initially, we note defendants and amicus allege the term "process" in the statute is broad and refers to any form of order, writ, summons or notice, rather than only to a warrant. We reject this view and agree with plaintiffs that "process" should be interpreted more narrowly as a judicial writ in order to preserve the constitutionality of the statute. *See State ex rel. Hagen v. Superior Court*, 139 Wash. 454, 460, 247 P. 942 (1926).

Plaintiffs assert the determination of whether RCW 69.50-.505(b) is unconstitutional as applied to seizure of real property upon ex parte issuance of a warrant in rem is resolved by an analysis of the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

(Citations omitted.)

Plaintiffs contend that because a seizure does not deprive a person of physical possession of the property, unless there is further action by the seizing agency, the private interest affected is slight; the risk of erroneous deprivation is small because a neutral and detached magistrate issues the war-

rant in rem based upon probable cause; and the government has a substantial interest to begin forfeiture proceedings, to remove the profit incentive of drug trafficking, and to provide revenue to the government to enforce the drug laws.

The Wilson defendants and amicus, relying on *Fuentes v. Shevin*, 407 U.S. 67, 81-82, 90, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972), argue that due process generally requires notice and an opportunity for a full evidentiary hearing prior to the deprivation of a property interest unless there are extraordinary circumstances justifying postponing the hearing.

In *Fuentes*, purchasers of household goods under conditional sales contracts challenged the constitutionality of prejudgment replevin statutes which allowed a party to obtain a writ of replevin upon ex parte application to a court clerk. The Court held that only in extraordinary situations is the postponement of a hearing allowed. Extraordinary circumstances exist when three criteria are present:

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. . . .

*Fuentes*, 407 U.S. at 91. Defendants argue that in the context of seizing real property, there is no need for prompt action because real property cannot be readily moved or concealed and therefore seizure without a prior hearing is invalid.

The one Supreme Court case which addresses a due process challenge to restraint of real property subject to forfeiture expressly did not consider whether a hearing was required before the restraining order was imposed. *See United States v. Monsanto*, 491 U.S. 600, 615 n.10, 105 L. Ed. 2d 512, 109 S. Ct. 2657 (1989). Consequently, a resolution of this issue depends upon our interpretation of federal law in this area.

In the context of personal property subject to forfeiture, the Court has permitted outright seizure with no type of hearing when the *Fuentes* criteria are met. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678-80, 40 L. Ed. 2d 452, 94 S. Ct. 2080 (1974); *United States v. Von Neumann*, 474 U.S. 242, 249 n.7, 88 L. Ed. 2d 587, 106 S. Ct. 610 (1986) (no preseizure hearing required when customs officials make seizure at border).

*Calero-Toledo* involved the seizure of a yacht, without a prior hearing or probable cause determination, which was subject to forfeiture under Puerto Rico statutes. The Court held the following considerations justified postponement of notice and a hearing until after the seizure in the context of the yacht forfeiture:

> First, seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions. Second, preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized — as here, a yacht — will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given. And finally, unlike the situation in *Fuentes*, seizure is not initiated by self-interested private parties; rather, Commonwealth officials determine whether seizure is appropriate under the provisions of the Puerto Rican statutes. . . .

(Footnotes omitted.) *Calero-Toledo*, 416 U.S. at 679. In a similar case involving the seizure of cash subject to forfeiture, without a prior hearing or probable cause determination, under the Bank Secrecy Act of 1970 (31 U.S.C. § 1101), the Court, in addressing whether the delay in bringing the forfeiture action deprived the plaintiff of due process, also noted:

> The general rule, of course, is that absent an "extraordinary situation" a party cannot invoke the power of the state to seize a person's property without a *prior* judicial determination that the seizure is justified. But we have previously held that such an extraordinary situation exists when the government seizes items subject to forfeiture. . . . *[Calero-Toledo]* clearly indicates

that due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture. Such a requirement would make customs processing entirely unworkable. The government interests found decisive in [*Calero-Toledo*] are equally present in this situation: the seizure serves important governmental purposes; a preseizure notice might frustrate the statutory purpose; and the seizure was made by government officials rather than self-motivated private parties.

(Citations omitted.) *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 562 n.12, 76 L. Ed. 2d 143, 103 S. Ct. 2005 (1983).

Outside the forfeiture context, the Court has required predeprivation evidentiary hearings under *Mathews v. Eldridge, supra,* in contexts where the private interest at stake was very great, *see Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969) (prejudgment writ garnishing wages); or, most recently, where the plaintiff's interest was minimal compared with the great risk of erroneous deprivation to the defendant's property interest, *see Connecticut v. Doehr*, ___ U.S. ___, 115 L. Ed. 2d 1, 111 S. Ct. 2105 (1991).

In *Connecticut v. Doehr, supra,* plaintiff DiGiovanni, who had filed an action based upon an alleged assault, obtained an ex parte prejudgment writ of attachment on all of the defendant's real property, including his home. In support of the writ, DiGiovanni submitted a brief affidavit stating that he was assaulted by the defendant. The Court, after analyzing the *Mathews* factors, held the risk of erroneous deprivation was too great to postpone an evidentiary hearing given the minimal interests of the plaintiff in ensuring the availability of the assets to satisfy his judgment if he prevailed. The risk of erroneous deprivation was great because the writ of attachment was based solely upon a "one-sided, self-serving, and conclusory [complaint and affidavit]." *Doehr*, 111 S. Ct. at 2114. The plaintiff's interest was minimal because

there was no allegation that Doehr [defendant] was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment. . . .

*Doehr*, 111 S. Ct. at 2115. Therefore, the Court held that, given the interests involved, absent some countervailing consideration or other exigent circumstance, due process required an evidentiary preattachment hearing.

The Court has upheld deprivations of property without a full evidentiary hearing prior to the deprivation in contexts where the governmental interest was great compared with the impact on the private interest. *See Fuentes*, 407 U.S at 92 (no predeprivation hearing required "to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food." (Footnotes omitted.)). *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 616-18, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974) (sequestration of personal property on ex parte application of creditor allowed where initial hardship to debtor is low, seller has a strong interest, and process proceeds under judicial supervision and prevailing party is protected against loss); *Mathews v. Eldridge, supra* (private interest in disability payments is less than in wages, termination decision based upon standard, routine, unbiased medical reports, and fiscal and administrative burden of pretermination evidentiary hearings out of proportion to benefits).

In summary, the Court has stated that with no extraordinary circumstances, *some type of hearing* prior to a deprivation is required by due process. *See Fuentes v. Shevin, supra.* If there are no extraordinary circumstances, then some type of prior hearing is required and an analysis of the three factors under *Mathews* determines the formality and procedural requisites of the hearing. *See Mathews v. Eldridge*, 424 U.S. at 333-35; *Boddie v. Connecticut*, 401 U.S. 371, 378-79, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971). If the risk of erroneous deprivation to a property interest is great compared to the government's interest, then due process generally will require an evidentiary hearing. *See Connecticut v. Doehr, supra.* Otherwise, some lesser form of hearing, such

as an ex parte hearing based upon probable cause, may be sufficient.

While a majority of federal cases have required evidentiary hearings before the government could seize homes, *see, e.g., United States v. James Daniel Good Property*, 971 F.2d 1376 (9th Cir. 1992); *Richmond Tenants Org., Inc. v. Kemp*, 753 F. Supp. 607 (E.D. Va. 1990); *United States v. Leasehold Interest in Property Located at 850 S. Maple*, 743 F. Supp. 505 (E.D. Mich. 1990); *United States v. Parcel I, Beginning at Stake*, 731 F. Supp. 1348 (S.D. Ill. 1990), these courts all relied upon *United States v. Premises & Real Property*, 889 F.2d 1258 (2d Cir. 1989) (*Livonia Rd.*) which has, we believe, misinterpreted the interplay between *Fuentes* and *Mathews*.

In *Livonia Rd.*, there was an ex parte hearing prior to the seizure. The adequacy of this procedure should have proceeded solely under the *Mathews* criteria. However, the court misapplied *Fuentes* and *Mathews* by "assessing the strength of the government's interest" in terms of whether the "case presented exigent circumstances warranting the postponement of notice and the opportunity for an *adversarial hearing*." (Italics ours.) *Livonia Rd.*, 889 F.2d at 1265. *Livonia Rd.* has no citations after this statement and for good reason.

First, *Fuentes* and *Boddie*, which *Fuentes* cites, stand only for the proposition that *some type of hearing*, not a full evidentiary hearing, is required before a deprivation. *See Fuentes*, 407 U.S. at 90; *Boddie*, 401 U.S. at 378-79. Second, consideration of the strength of the government's interest under *Mathews* is not assessed in terms of whether exigent circumstances are present. The existence of exigent circumstances is only relevant if no prior hearing of any type was used.

*Livonia Rd.* and subsequent cases are relevant, however, in that they help define the strength of the private interest in a home. The "expectation of privacy and freedom from governmental intrusion in the home merits special constitutional protection." *Livonia Rd.*, 889 F.2d at 1264 (citing

*United States v. Karo*, 468 U.S. 705, 714, 82 L. Ed. 2d 530, 104 S. Ct. 3296 (1984)).

Courts have upheld seizures of homes without prior evidentiary hearings. *See United States v. Tax Lot 1500*, 861 F.2d 232 (9th Cir. 1988); *United States v. 26.075 Acres*, 687 F. Supp. 1005, 1012 (E.D.N.C. 1988) (*Swift Creek*), *aff'd in part, rev'd in part on other grounds sub nom. United States v. Santoro*, 866 F.2d 1538 (4th Cir. 1989); *United States v. Single Family Residence*, 803 F.2d 625 (11th Cir. 1986). The *Swift Creek* court, citing *Calero-Toledo*, upheld the seizure of real property, including a residence, subject to forfeiture after issuance of a warrant of arrest in rem based upon a determination of probable cause. *Swift Creek*, 687 F. Supp. at 1012. The *Swift Creek* court did not engage in an analysis of the *Mathews* factors, but simply stated that the seizure of property subject to forfeiture is, in itself, an extraordinary situation under *Fuentes* sufficient to postpone notice and a hearing. *See Swift Creek*, 687 F. Supp. at 1012; *see also Single Family Residence*, 803 F.2d at 632. While there is language in *Calero-Toledo* which suggests this position, no hearing of any type was held prior to the seizure and the court opinion goes on to enumerate the particular considerations present which justified the lack of a hearing. *Calero-Toledo*, 416 U.S. at 680.

The *Tax Lot* court upheld the seizure of a home based upon an ex parte finding of probable cause. *See United States v. Tax Lot 1500, supra*. The *Tax Lot* court held that prior ex parte judicial review was sufficient to satisfy due process, but did not analyze the *Mathews* factors. *Tax Lot*, 861 F.2d at 236.

In nonhome contexts, courts have upheld seizures of real property on ex parte determinations of probable cause. *See United States v. 141st St. Corp.*, 911 F.2d 870 (2d Cir. 1990) (apartment building); *United States v. All Right, Title & Interest in Real Property*, 730 F. Supp. 1265 (S.D.N.Y. 1990) (*16 Clinton St.*) (building); *United States v. Parcel of Real Property*, 636 F. Supp. 142 (N.D. Ill. 1986) (building); *United States v. Certain Real Estate Property*, 612 F. Supp. 1492,

1497 (S.D. Fla. 1985) (resort, boat company, and restaurant). The *141st St.* and *16 Clinton St.* courts, however, following *Livonia*, erroneously required a showing of exigent circumstances before upholding the seizure based upon an ex parte warrant. *141st St.*, 911 F.2d at 875; *16 Clinton St.*, 730 F. Supp. at 1271-72.

The court in *Parcel of Real Property* relied on *Certain Real Estate Property* in holding that ex parte preseizure judicial review meets minimal standards of due process. *Parcel of Real Property*, 636 F. Supp. at 145-46. We concur with *Certain Real Estate Property* which provides an accurate interpretation and application of *Mathews* and *Fuentes*.

> *Fuentes* — and *Calero-Toledo* for that matter — make clear that *some sort of preseizure hearing* is necessary as long as there is a reasonable likelihood that the *res* is not going to disappear.
>
> . . . .
>
> The *ex parte* nature of the preseizure hearing does not violate the teachings of *Fuentes* and its progeny. . . .

(Italics ours.) *Certain Real Estate Property*, 612 F. Supp. at 1496-97.

The Wilson defendants and amicus do not address the application of the *Mathews* factors because they have erroneously relied upon *Fuentes* as requiring exigent circumstances to justify any process less than a full evidentiary hearing prior to the deprivation. However, *Fuentes* is not applicable because defendants in both cases were afforded a hearing prior to the deprivation, although not a full evidentiary hearing.

Consequently, the issue of whether the ex parte hearings met due process standards under the circumstances of these cases is properly analyzed under *Mathews*.

■ First, in order to preserve the constitutionality of the statute, we construe the term "seizure", as it is used in the context of seizure of real property in RCW 69.50.505, to establish only an inchoate property interest in the seizing agency. *See High Tide Seafoods v. State*, 106 Wn.2d 695, 698, 725 P.2d 411 (1986); *United States v. Ladson*, 774 F.2d 436, 439 (11th Cir. 1985). We hold that a seizure, itself, does

not allow the seizing agency to remove the occupants from physical possession of the property. The effect of a seizure is to commence the forfeiture proceeding. RCW 69.50.505(c). Once the property has been seized, the seizing agency may take further action to remove the occupants or enter into an occupancy agreement only upon further order of the court following notice and an opportunity for the property owners to be heard. Claimants are entitled to a full adversarial hearing within 90 days if they contest the seizure. RCW 69.50.505(e). At the hearing, the burden is upon the seizing agency to prove the real property is subject to seizure. RCW 69.50.505(e).

In these cases, the Wilson defendants have remained in possession of their home and the Pearson defendants have continued to collect rent. While the private interest in a home merits special constitutional protection, we find that the temporary impact on the private interest by the seizure of the home and the rental property in these cases, while significant, is less than that of a permanent or physical dispossession of the property. *See Doehr*, 111 S. Ct. at 2113.

Second, the risk of erroneous deprivation is minimal because probable cause is based upon police affidavits after valid searches which showed that "a substantial nexus exist[ed] between the commercial production or sale of the controlled substance and the real property". RCW 69.50-.505(a)(8). The affidavits list the equipment and amount of drugs found and the physical location and size of the operation. Thus, there is documented evidence which provides an objective basis from which to determine whether the standard in RCW 69.50.505(a)(8) has been met. When the probable cause issue concerns "uncomplicated matters that lend themselves to documentary proof", the likelihood of error is minimal. *See Doehr*, 111 S. Ct. at 2114 (quoting *Mitchell*, 416 U.S. at 609).

Lastly, the government has a significant interest in seizing the property and preventing continued use of the premises for illegal activity. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 40 L. Ed. 2d 452, 94 S. Ct. 2080

(1974). The Legislature has declared that forfeiture, which is commenced by seizure,

> provide[s] a significant deterrent to crime by removing the profit incentive of drug trafficking, and . . . provide[s] a revenue source that will partially defray the large costs incurred by government as a result of these crimes. . . .

Laws of 1989, ch. 271, § 211, p. 1298.

■ Thus, while the private and governmental interests are significant in this case, the risk of erroneous deprivation is slight given the documentary nature of the bases for probable cause. Therefore, the balance of interests does not create a need for a full evidentiary hearing prior to seizure. *See Connecticut v. Doehr, supra.* Rather, in these circumstances, an ex parte probable cause hearing is sufficient to meet minimal due process requirements. Moreover, the statute requires a full adversarial hearing with judicial review within 90 days if the claimant notifies the seizing agency in writing. RCW 69.50.505(e); RCW 34.05.419.

■ We hold RCW 69.50.505(b) was constitutionally applied and, as construed, is facially valid.

### III

We now address whether the trial court erred in granting summary judgment to Janet Pearson and denying plaintiffs' CR 56(f) motion. Janet Pearson alleged she had no knowledge and did not consent to the illegal activity on the real property and, thus, her interest may not be forfeited under RCW 69.50.505(a)(8)(i), which provides:

> No property may be forfeited pursuant to this subsection, to the extent of the interest of an owner, by reason of any act or omission committed or omitted without the owner's knowledge or consent.

The trial court held plaintiffs had not raised a genuine issue of fact regarding Janet Pearson's consent to the illegal activity. In so holding, the trial court interpreted this section to allow owners to prohibit forfeiture of their interest in the property if they either had no knowledge *or* did not consent to the illegal use.

Plaintiffs do not challenge the trial court's disjunctive interpretation of RCW 69.50.505(a)(8)(i). Rather, they assert acquiescence is sufficient to show consent. The trial court does not address how it defined "consent", and it is not defined in the statute. Under the federal forfeiture provision, consent has been defined as "the failure to take all reasonable steps to prevent illicit use of [the] premises once one acquires knowledge of that use". *141st St.*, 911 F.2d at 879 (citing *Calero-Toledo*, 416 U.S. at 689); *United States v. Sixty (60) Acres*, 727 F. Supp. 1414 (N.D. Ala. 1990). This definition was used because

> when combined with [the disjunctive] construction of the phrase "knowledge or consent," it provides a balance between the two congressional purposes of making drug trafficking prohibitively expensive for the property owner and preserving the property of an innocent owner. A claimant with knowledge of the illegal use to which his property is put may defend on the basis of lack of consent, but consent in this situation must be something more than a state of mind. The illicit sale and use of drugs is taking an ever increasing toll on our nation. These activities affect almost every aspect of modern existence . . . Given the present circumstances, defining "consent" in section [21 U.S.C. §] 881(a)(7) as the failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of that use is entirely appropriate.

(Footnote omitted.) *141st St.*, 911 F.2d at 879. Likewise, we define consent in RCW 69.50.505(a)(8)(i) similarly to balance the two policies enunciated by the Washington Legislature: to remove the profit incentive from drug trafficking and to protect innocent owners.

Defendants assert we may uphold the trial court's summary judgment ruling by holding that RCW 69.50.505(d) requires innocent owners to participate in the illegal activity in order for their interest to be forfeitable. That provision states:

> The community property interest in real property of a person whose spouse committed a violation giving rise to seizure of the real property may not be forfeited if the person did not participate in the violation.

The trial court ruled the defense of lack of participation applied only to default situations

in which the law enforcement agency is attempting to forfeit the community property interest in real property of a person whose spouse committed a violation giving rise to the seizure and who has failed to file a claim within the time period set forth in the statute.

We decline to rule on the participation issue because defendants failed to cross-appeal this ruling. *See Sunland Invs., Inc. v. Graham,* 54 Wn. App. 361, 364, 773 P.2d 873 (1989).

■ Under the federal statute, the claimant has the burden of proving a lack of consent. Here, while the State carries the burden of proving real property is subject to forfeiture, the State is not required to "negate any exemption or exception". RCW 69.50.506(a). Rather, "[t]he burden of proof of any exemption or exception is upon the person claiming it." RCW 69.50.506(a). Therefore, the State carries the initial burden of producing evidence to show knowledge and consent, but the claimant carries the burden of persuasion of showing a lack of knowledge and consent.

■ The issue then is whether the State presented evidence which raised a genuine issue regarding Janet Pearson's knowledge or consent. We must consider all the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Johnson v. Schafer,* 110 Wn.2d 546, 756 P.2d 134 (1988).

Plaintiffs contend they were attempting to obtain, through further discovery, the following facts necessary to overcome summary judgment: (1) Janet Pearson lived in the house when the house was remodeled, including the installation of the trapdoor; (2) Janet Pearson shared equally in the control of the family finances; and (3) a confidential informant had information that marijuana was being dried and packaged in Janet Pearson's current residence. The only fact before the trial court was Janet Pearson's denial of knowledge or con-

sent. Consequently, without the above facts, plaintiffs could not defeat summary judgment.

Plaintiffs contend, however, that the trial court erred in denying their CR 56(f) motion for a continuance to allow further discovery.

■ CR 56(f) provides:

Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A court's denial of a CR 56(f) motion is reviewed under an abuse of discretion standard. *Coggle v. Snow*, 56 Wn. App. 499, 504, 784 P.2d 554 (1990). A court may deny a motion for a continuance when

(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.

*Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

The affidavit of Roselyn Marcus, the assistant attorney general handling the case, states:

13. Plaintiff had several theories regarding this case and the facts necessary to prove the issues at hand. Financial information is needed to show either that the community benefited from the marijuana grow operation or that Mrs. Pearson knew or participated in this operation by her acquiescence and benefit of its monetary gains. However, plaintiff did not begin to pursue formal discovery pursuant to the civil rules based on the belief that Mr. Bianchi had agreed to furnish documents in good faith.

. . .

15. On June 18, 1990, I met with Mr. Driano, Officer Smith and Chief Webb. It was then that I learned that the confidential informant had stated that Mr. Pearson would dry and package the marijuana at the residence shared with Mrs. Pearson.

. . .

18. There was substantial reason to believe Mrs. Pearson had knowledge based on the informant's information and the

limited financial information in my possession. So, upon further thought, I prepared Plaintiff's First Set of Interrogatories and Requests for Production of Documents. These were sent to defendant's respective attorneys on June 27, 1990 . . . This discovery request was needed since Mr. Bianchi never provided the information and plaintiff had no other way to obtain the information needed to develop the facts necessary to show financial benefit to the community and knowledge of consent of Mrs. Pearson.

19. On June 28, 1990, I was served with defendant's motion. Because of this, I have not been provided with answers to the discovery requests.

Clerk's Papers, at 69-71. In a separate affidavit, Ms. Marcus states that the location of the confidential informant was obtained on August 9, 1990, but the informant would not answer questions without prior authorization from his attorney.

The trial court should have allowed plaintiffs to complete discovery. The necessary information was not obtained because defendants' counsel did not provide the requested documents when asked informally nor when served with requests for production. In addition, the location of a confidential informant was unknown until August 9, 1990. Plaintiffs set forth the evidence they sought to establish through further discovery: (1) Mrs. Pearson was residing in the house when the renovations were being made; (2) Mrs. Pearson had joint control over the finances; and (3) the marijuana was being packaged and dried in her current residence. These facts and the reasonable inferences therefrom viewed in the light most favorable to the plaintiffs would raise genuine issues of fact regarding Mrs. Pearson's knowledge of and her acquiescence or consent to the illegal conduct. Therefore, the trial court abused its discretion in not granting the continuance. *See Lewis v. Bell*, 45 Wn. App. 192, 196, 724 P.2d 425 (1986).

### IV

Plaintiffs also contend the trial court erred in awarding Mrs. Pearson attorney fees pursuant to RCW 4.84-.185 upon a finding that the action against her was frivolous

and advanced without reasonable cause. We find the issues presented in the action against Janet Pearson raised meritorious issues under the statute regarding the innocent owner provision. The trial court abused its discretion in awarding attorney fees. *See Moorman v. Walker*, 54 Wn. App. 461, 466, 773 P.2d 887 (1989).

## V

Lastly, plaintiffs, in their statement of grounds for direct review appealed whether the trial court properly applied the manifest injustice standard for determining whether a forced sale of Janet Pearson's community property interest could take place upon forfeiture of Mr. Pearson's interest. However, the plaintiffs did not raise the issue in their assignments of error or argue the issue in their briefs. Therefore, we do not consider this issue on appeal. *See Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 785 P.2d 815 (1990); *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 593 P.2d 156 (1979).

In conclusion, we reverse the trial court in Tellevik v. 9209 218th N.E. and hold that real property subject to seizure under RCW 69.50.505(a)(8) does not lose this status by intervention of law enforcement. We reverse both trial courts and hold that RCW 69.50.505(b) is not unconstitutional on its face or as applied under the due process clause of the United States Constitution. In Tellevik v. 31641 West Rutherford Sreet, we reverse the trial court's grant of summary judgment and award of attorney fees in favor of Janet Pearson, and its denial of plaintiffs' CR 56(f) motion. Plaintiffs in Tellevik v. 31641 West Rutherford Street should be allowed to complete discovery in their case against Janet Pearson. As to the remaining defendants, both cases are remanded for trial on the forfeitures.

Dore, C.J., and Brachtenbach, Andersen, Durham, and Guy, JJ., concur.

JOHNSON, J. (dissenting) — The government violated the property owners' constitutional right to due process when it seized their homes. I therefore dissent. The majority jeopardizes the timely process of forfeiture of property even though the constitutional requirements of notice and an opportunity for a hearing are simple to institute and no showing of exigent circumstances has been made. The majority uses an argument not advanced, argued or briefed by the State to save the constitutionality of these seizures. The majority's approach fails because the United States Supreme Court considered and rejected this approach in *Connecticut v. Doehr*, ___ U.S. ___, 115 L. Ed. 2d 1, 111 S. Ct. 2105 (1991), its most recent opinion regarding ex parte deprivation of real property interests.

This case involves a homeowner's due process rights under the fourteenth amendment to the United States Constitution when the State, in the absence of exigent circumstances, tries to seize the house using only ex parte procedures. Exigent circumstances do not exist in this case; the State delayed seizing the subject properties for over half a year. Where exigent circumstances are absent, the majority of federal cases have required adversarial, not ex parte, hearings before the government can seize a house. Majority, at 83. The majority's attempt to distinguish these federal cases cannot be squared with the United States Supreme Court's opinion in *Doehr* and other federal cases. These cases demonstrate that the presence or absence of exigent circumstances remains a crucial factor in determining the constitutionality of ex parte procedures. When exigent circumstances are absent, the government's interest in seizing real property through ex parte procedures must give way to the property owner's superior interest. Because the ex parte seizures violated due process, the statute is unconstitutional as applied to seizing the homes in this case. I would affirm the trial courts' dismissal of the State's complaints.

This case is governed by the threefold inquiry established in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S.

Ct. 893 (1976). In *Mathews*, the Court developed a 3-prong test for determining what procedures are required under due process. Under this test, a court considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, at 335.

The Supreme Court's opinion in *Doehr* demonstrates the proper application of the *Mathews* 3-part test in this case. In *Doehr*, a plaintiff in a civil action for assault and battery obtained a prejudgment attachment on the defendant's house. The judge ordered the attachment on the basis of an ex parte hearing. The defendant challenged the attachment as violating his due process rights because he was deprived of property without prior notice and an opportunity for a hearing. The Supreme Court applied the *Mathews* test in *Doehr* and held that ex parte attachment of the defendant's home violated due process. The Court's analysis applies directly to the present cases,[1] yet the majority disregards it.

1. The Property Owner's Interest.

Under the first prong of the *Mathews* test, we must evaluate the defendants' interest in protecting their houses from being seized under RCW 69.50.505. The majority properly characterizes this interest as "significant". Majority, at 86.

---

[1]Although the focus shifts slightly when the party seeking a property deprivation is a private plaintiff rather than the government, the *Mathews* analysis is essentially the same in either case. When the government is seeking to deprive an owner of his or her property, the court analyzes the *Mathews* factors described above. When a private party is seeking to deprive an owner of property, the court asks the same questions but bifurcates its inquiry on the third *Mathews* factor: the court first examines the interest of the private party seeking the prejudgment remedy and second analyzes any ancillary governmental interest in "providing the procedure or forgoing the added burden of providing greater protections." *Doehr*, 111 S. Ct. at 2112.

In *Doehr*, the Court held that a similar interest in protecting houses from prejudgment attachment was "significant", concluding it was "subject to the strictures of due process." *Doehr*, 111 S. Ct. at 2113 (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 85, 99 L. Ed. 2d 75, 108 S. Ct. 896 (1988)). The Court stated:

> [T]he property interests that attachment affects are significant. For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause.

*Doehr*, 111 S. Ct. at 2112-13.

Seizing a house under the Washington statute in this case similarly restricts the owner from alienating or encumbering the property. RCW 69.50.505(b). Moreover, the intrusion involved in this type of seizure does not stop here. The government's seizure enables it, under the guise of protecting its forfeiture interests, to control the owner's use — and arguably even the possession — of the home. The government has required owners to enter into occupancy agreements in order to maintain possession of their property, or even to regain possession after being evicted from the property during the seizure. *See, e.g., In re Kingsley*, 802 F.2d 571, 579 (1st Cir. 1986); *United States v. Premises & Real Property*, 889 F.2d 1258, 1261 (2d Cir. 1989) (*Livonia Rd.*). Occupancy agreements restrict the owner's use of the property, can render the owner liable for damage to the property, and even provide for governmental entry and inspection. *See Kingsley*, at 579.

The majority attempts to preserve the constitutionality of the statute by construing the term "seizure" as establishing only an inchoate property interest in the seizing agency. Majority, at 85. By limiting the scope of the seizure in this manner, the majority concludes that this temporary impact on the private interest is less than that of a permanent or physical dispossession of the property, thereby justifying an

ex parte procedure. Majority, at 86 (citing *Doehr*, 111 S. Ct. at 2113). In striking down a similar ex parte procedure in *Doehr*, however, the Supreme Court stated:

> the Court has never held that only such *extreme* deprivations trigger due process concern. To the contrary, our cases show that *even the temporary or partial impairments* to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.

(Citation omitted. Italics mine.) *Doehr*, 111 S. Ct. at 2113.

Not only is this level of intrusion on property ownership significant, but as even the majority concedes, a homeowner's expectation of privacy and freedom from governmental intrusion merits *special* constitutional protection. Majority, at 83-84 (citing *Premises & Real Property*, at 1264 (*Livonia Rd.*)). Thus, this level of intrusion, coupled with the special constitutional protections that apply to a person's house, renders the homeowner's interest significant.

2. The Risk of Erroneous Deprivation.

Under the second prong of *Mathews,* we must evaluate the risk that ex parte procedures will erroneously deprive an owner of property and determine if requiring an adversarial hearing will provide greater protection.

The majority characterizes the risk of erroneous deprivation in this case as "minimal" because the ex parte determination of probable cause concerns " 'uncomplicated matters that lend themselves to documentary proof' ". Majority, at 86 (quoting *Doehr*, 111 S. Ct. at 2114 (quoting *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 609, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974))). The majority's only explanation for this conclusion is that the affidavits presented below provided sufficient information for the judges to determine that a substantial nexus existed between the real property and its illegal use. Majority, at 86.

This analysis, however, fails to fully take into account the Supreme Court's opinion in *Doehr*. The Court stated: "*Unlike determining the existence of a debt or delinquent payments,* the issue [in a claim of tortious assault] does not concern 'ordinarily uncomplicated matters that lend themselves to

documentary proof.' " (Italics mine.) *Doehr*, 111 S. Ct. at 2114 (quoting *Mitchell*, at 609). The existence of a debt and payment delinquencies may be objectively determined by simply examining the relevant documentation. In *Doehr*, however, the deprivation of property under the attachment statutes turned on factual contingencies that could not be determined by objective documentation. *Doehr*, 111 S. Ct. at 2113.

This case also involves factual inquiries. The majority's analysis suggests that the probable cause hearing only requires deciding whether a "substantial nexus" exists between the real property and the illegal drug activity. More is involved, however. The judge must not only find a substantial nexus *but also* determine that the defendant *knew* of the illegal activity. See majority, at 76-77; RCW 69.50-.505(a)(8). Knowledge issues are not "ordinarily uncomplicated matters" susceptible to documentary proof; rather, they involve fact-intensive determinations based on evaluating circumstantial evidence. *See Reardon v. United States*, 947 F.2d 1509, 1519 (1st Cir. 1991). They create a far greater risk of erroneous deprivation than the objectively determinable issues concerning the existence of debt or delinquent payments.

Moreover, *Doehr* emphasizes that making "realistic assessments" of the merits of a case based on ex parte showings is difficult because these showings can be "one-sided, self-serving, and conclusory". *Doehr*, 111 S. Ct. at 2114. The Court noted:

> The likelihood of error that results illustrates that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and an opportunity to meet it." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-172, 71 S.Ct. 624, 647-649, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring).

*Doehr*, 111 S. Ct. at 2114.

The fact that the property owners are entitled to notice and an adversarial hearing *after* the seizure does not materially reduce the risk of erroneous deprivation. Even if

a later hearing reveals that probable cause did not actually exist, this postseizure finding "would not cure the temporary deprivation that an earlier hearing might have prevented". *Doehr*, 111 S. Ct. at 2115. Thus, the ex parte procedures create a considerable risk that real property will be erroneously seized.

3. The Governmental Interest.

Under the third prong of *Mathews*, we must evaluate the State's interest, including the function involved and any fiscal and administrative burdens that additional procedures would entail. *Mathews*, at 335. The majority finds that the State's interest in these cases is "significant" because the Legislature has expressed a strong interest in deterring crime through the seizure and forfeiture of real property used for illegal drug purposes. Majority, at 86-87; Laws of 1989, ch. 271, § 211, p. 1298. The majority, however, has incorrectly framed the issue in analyzing the third *Mathews* prong. The issue is *not* the government's interest in seizing property, but the government's interest in doing so *through ex parte procedures. See Doehr*, 111 S. Ct. at 2115 (analyzing the extent of the plaintiff's interest in *ex parte* attachment of property, not the plaintiff's *general* interest in property attachment). The government's interest in seizing property to deter illegal drug use would not be affected by requiring an adversarial hearing rather than an ex parte proceeding. With an adversarial hearing, the State would still be able to initiate forfeiture proceedings, provide a significant deterrent to drug trafficking, and enhance revenue to partially defray crime control costs but, at the same time, protect the individual homeowner from an erroneous deprivation of property rights. The State can still effectuate its goal of deterring drug use without eroding the due process clause.

The majority also concludes exigent circumstances are irrelevant under *Mathews* in evaluating the strength of the government's interest. Majority, at 83. In *Doehr*, however, the Court emphasizes that the presence or absence of exigent circumstances is a critical part of the third *Mathews*

factor.[2] *Doehr*, 111 S. Ct. at 2115-16. The Court held that the plaintiff's interest in ex parte attachment of property was minimal because

> there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an *exigent circumstance* permitting postponing any notice or hearing until after the attachment is effected. *Absent such allegations,* however, the plaintiff's interest in attaching the property does not justify the burdening of Doehr's ownership rights without a hearing to determine the likelihood of recovery.

(Citations omitted. Italics mine.) *Doehr*, 111 S. Ct. at 2115. In other words, if exigent circumstances suggest a defendant is about to transfer or encumber the property, then the government has a powerful interest in acting ex parte to prevent that action. Absent such exigent circumstances, however, the government's interest is minimal. Other federal courts construing *Doehr* have also concluded that, absent exigent circumstances, a plaintiff's interest in encumbering property is not sufficient to justify burdening the owner's property rights without first providing notice and an opportunity to be heard. *See, e.g., United States v. James Daniel Good Property*, 971 F.2d 1376 (9th Cir. 1992); *United States v. Certain Real Property Located on Hanson Brook*, 770 F. Supp. 722, 730 (D. Me. 1991).

The majority cites examples of exigent circumstances that justified seizure of property without a hearing in order to secure an important governmental interest. For example, the majority cites two Supreme Court cases involving the

---

[2]This third *Mathews* factor also turns on whether the plaintiff had a recognized interest in the property prior to seeking the deprivation. *See Doehr*, 111 S. Ct. at 2115; *Reardon*, 947 F.2d at 1520. For example, a plaintiff with a preexisting vendor's or mechanic's lien would be accorded a "heightened" interest. *See Doehr*, 111 S. Ct. at 2113 n.4, 2115; *Reardon*, at 1520-21. In this case, the State had no recognized interest in the properties prior to seeking the deprivation because it had not yet established that these properties were being used in violation of RCW 69.50.505. *See Reardon*, at 1520-21 (using a similar analysis with respect to federal liens for Comprehensive Environmental Response, Compensation, and Liability Act cleanup costs).

seizure of a yacht and cash. Majority, at 80-81 (citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 40 L. Ed. 2d 452, 94 S. Ct. 2080 (1974); *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 76 L. Ed. 2d 143, 103 S. Ct. 2005 (1983)). Because this type of property could be easily destroyed, hidden, or removed to another jurisdiction, the Court held that these exigent circumstances justified outright seizure without a hearing. But those cases involved *personal* property, which is easily moved or hidden; real property, on the other hand, is immovable. Furthermore, in this case as in *Doehr*, no allegations have been made of any pending transfers or encumbrances by the defendants. Finally, the State waited at least 6 months after confiscating the marijuana to initiate the seizure process. Exigent circumstances simply do not exist in this case. The majority's exclusion of these considerations from its *Mathews* analysis cannot be justified.

Requiring adversarial preseizure hearings would not involve undue financial or administrative burdens. The defendants already have a statutory right to adversarial *post*-seizure hearings. *See* RCW 69.50.505(e). Conducting these hearings prior to the seizure would not impose additional financial or administrative burdens on the State. *See Doehr*, 111 S. Ct. at 2115 ("[T]he State cannot seriously plead additional financial or administrative burdens involving pre-deprivation hearings when it already claims to provide an immediate post-deprivation hearing."). Therefore, the State's interest in conducting ex parte seizures in these cases is minimal.

The balancing of the *Mathews* factors in the present case is straightforward. Absent exigent circumstances, the State's interest in ex parte seizures — with their inherent risk of erroneously depriving property — is simply not more compelling than the owner's interest in participating in a preseizure adversarial hearing. *Doehr* involved similarly weighted interests, and the Court in that case found the ex parte procedures violated due process. Moreover, as the majority recognizes, most federal cases involving home seizures have required an

evidentiary hearing before a home can be seized. Majority, at 83. *Doehr* establishes that these federal cases properly assessed the governmental interest in light of the absence of exigent circumstances. Thus, the majority's attempt to distinguish these cases fails.

Because the ex parte seizures violated due process, I would affirm the trial courts' rulings dismissing the actions.

UTTER, J., concurs with JOHNSON, J.

After modification, further reconsideration denied February 12, 1993.